IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**UNITED STATES OF AMERICA,**       CASE NO. 3:24 CR 36

    Plaintiff,

    v.                                JUDGE JAMES R. KNEPP II

**MICHAEL RIORDAN,**
                                   MEMORANDUM OPINION AND
    Defendant.                      ORDER

## INTRODUCTION

Currently pending before the Court is Defendant Michael Riordan's Motion to Suppress. (Doc. 12). The Government opposes (Doc. 15), and Riordan replies (Doc. 17). For the reasons discussed below, the Court denies the motion.

## BACKGROUND

In January 2024, FBI Agent Matthew Cromly obtained a search warrant for Riordan's home and any electronic devices therein based on evidence suggesting involvement in receiving and/or distributing child pornography in violation of Title 18 U.S.C. §2252 (a)(2). *See* Doc. 12-1. This evidence included information from a law enforcement database. Riordan was indicted on one count of Receipt and Distribution of Child Pornography on February 7, 2024. (Doc. 9).

In December 2022, FBI Cleveland identified an Internet Protocol ("IP") address of 162.237.33.65 (the "IP Address") sharing child pornography files or Child Sexual Abuse Material ("CSAM"). (Doc. 12-1, at 20). Further investigation revealed that Homeland Security Investigations ("HSI") in Owensboro, Kentucky, had also identified the IP Address sharing

CSAM. *Id.* FBI Cleveland confirmed that undercover law enforcement had downloaded CSAM from the IP Address six times from April 13, 2022, to December 14, 2022. *Id.*

On May 21, 2022, HSI conducted a peer-to-peer ("P2P") file-sharing investigation and found the IP Address was associated with multiple files containing CSAM. *Id.* at 20. By August 15, 2022, HSI identified approximately nineteen videos and 131 image files of CSAM downloaded at the IP Address. *Id.* A review of the Lucas County Auditor's database confirmed Riordan as the owner of the residence linked to the IP Address. *Id.* at 21. On January 30, 2023, the internet service provider verified Riordan was the subscriber associated with the IP Address. *Id.* at 21.

On the same day, FBI Cleveland met with a U.S. Secret Service Task Force Officer and retrieved a thumb drive containing files downloaded from the IP Address. *Id.* On February 2, 2023, FBI Cleveland reviewed the files on the thumb drive and confirmed that they contained CSAM. *Id.* On May 5, 2023, FBI Cleveland sent another subpoena to the internet service provider, which again confirmed Riordan's association with the IP Address. *Id.* at 22.

In June 2023, a query of the law enforcement database for the IP Address revealed Riordan had over 90,000 files of interest of CSAM or possible CSAM. *Id.* On December 8, 2023, FBI Cleveland conducted physical surveillance of the residence and confirmed a vehicle traced to Riordan parked in front of the residence. *Id.* at 23. Another subpoena in January 2024 reaffirmed the link between Riordan and the IP Address. *Id.*

## STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. To establish probable cause, officers must establish "a fair probability that contraband or evidence of a crime

will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Put another way, there must be a "nexus" between the "place" to be searched and the "things" to be seized. *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021). "Probable cause is defined as 'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.'" *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

Whether the affidavit gives rise to this fair probability "depends on the totality of the circumstances." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citing *Gates*, 462 U.S. at 230). "The probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.'" *Id.* (quoting *Gates*, 462 U.S. at 231); *see also Gates*, 462 U.S. at 231 (highlighting the "common-sense conclusions about human behavior" that are integral to an analysis of probable cause); *Florida v. Harris*, 568 U.S. 237, 244 (2013) (describing a "practical and common-sensical standard" underlying the analysis of probable cause).

In assessing the sufficiency of an affidavit supporting a warrant, the Court looks only to the four corners of the affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). To encourage use of the warrant procedure, a magistrate judge's probable-cause determination is afforded "great deference" and should be reversed only if the issuing judge arbitrarily exercised his discretion. *Gates*, 462 U.S. at 236 (quotation omitted); *see also United States v. Baker*, 976 F.3d 636, 646 (6th Cir. 2020) (recognizing courts' obligation to give issuing judges the benefit of the doubt in "doubtful or marginal cases"); *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013) ("[W]e may only reverse a magistrate's decision to grant a search warrant if the magistrate arbitrarily exercised his or her authority."); *United States v. Lapsins*, 570 F.3d 758, 763 (6th Cir.

2009) ("[S]o long as the magistrate had a substantial basis for . . . concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.").

## DISCUSSION

Riordan has moved to suppress the evidence obtained under the search warrant. He argues the warrant lacked probable cause because it relied on information from a law enforcement database, the reliability of which was not established. The Government responds that several subsequent investigative steps corroborated the information from the database, which supported a finding of probable cause.

Riordan contends the warrant failed to provide information about the reliability of the database and the experience or training of the individual using it. (Doc. 12, at 3). He states, "[b]ecause this unnamed database is the equivalent of 'a person unknown to the court,' its reliability must be established. As the affidavit lacked any statement about reliability, it was insufficient to satisfy probable cause." *Id.* However, probable cause is determined by evaluating the totality of the circumstances. *Gates*, 462 U.S. at 238. The database information was the initial step in the investigation, leading to multiple corroborative steps that collectively provided a substantial basis for probable cause. *Lapsins*, 570 F.3d at 763.

First, the law enforcement database identified the IP Address associated with Riordan as sharing CSAM. (Doc. 12-1, at 20). This information was corroborated by subpoenas to the internet provider, which verified the IP Address was registered to Riordan and linked to his residence. *Id.* at 21-23. Physical surveillance conducted by the FBI confirmed Riordan resided at the address. *Id.* at 23. Undercover operations provided direct evidence by downloading CSAM from the IP Address. *Id.* at 21. Additional corroboration came from HSI's investigation into illegal activity from the IP Address since 2022. *Id.* at 20. Collectively, these steps established a substantial basis

4

for probable cause. This aligns with the principle that probable cause is determined by the totality of the circumstances. *Frazier*, 423 F.3d at 531 (citing *Gates*, 462 U.S. at 230).

Riordan contends that because the use of the database "stepped off the investigation and let to subsequent efforts, the later acts of law enforcement are not independent. Rather, the use of the law enforcement database started the investigation and is inextricably intertwined with all the subsequent investigation efforts". (Doc. 17, at 2). He argues the seized evidence should be excluded as "fruit of the poisonous tree" because the search warrant lacked probable cause as the reliability of the database was not established. (Doc. 12, at 1, 4). The "fruit of the poisonous tree" doctrine, derived from *Wong Sun v. United States*, 371 U.S. 471 (1963), mandates that evidence obtained directly or indirectly through unconstitutional means must be excluded from trial. Riordan further argues that but for the use of the database, the law enforcement action would not have occurred. (Doc. 17, at 3).

The "fruit of the poisonous tree" doctrine applies to situations when the initial evidence-gathering step itself is unlawful, thus rendering subsequent evidence inadmissible if it is derived from the initial illegal search. *Wong Sun*, 371 U.S. at 484-85. Here, the database query served as an initial lead. The fact that the database information initiated the investigation does not render the search unconstitutional. Instead, the database served as a legitimate starting point that was validated by independent, corroborative investigative actions. These steps included: verifying the IP Address with the internet provider, physical surveillance, undercover operations, and corroboration from HSI together established probable cause. (Doc. 12-1, at 20-23).

Although Riordan implicitly argues the search warrant was issued solely based on the database information and that none of the additional corroborating evidence was independent, this Court must consider the entire affidavit in evaluating Riordan's challenge to the search warrant.

5

This specific point was articulated in the Ninth Circuit case cited by Riordan. *See Gonzalez v. United States Immigration. & Customs Enf't*, 975 F.3d 788, 819 (9th Cir. 2020) ("when the government relies *solely* on a computer database to make a probable cause determination, the legality of a resulting seizure or detention hinges entirely on the reliability of [the] computer database.") (emphasis in original) (citation omitted). Here, the probable cause determination was not based solely on the law enforcement database. Instead, probable cause was established by considering all the above investigatory steps.

Neither Riordan nor the Government cited cases specifically addressing the use of databases in investigations involving CSAM. Riordan cites *United States v. Lawson*, 2020 U.S. Dist. LEXIS 197478, *4-6 (E.D. Ky.) to argue the reliability of the database must be established to support probable cause. (Doc. 12, at 4). In *Lawson*, the court questioned the officer's familiarity with the database and its reliability in the context of reasonable suspicion for a traffic stop, and emphasized that the entire basis for the stop hinged on the database. In this case, by contrast, the database served only as an initial lead, followed by multiple independent corroborative steps outlined above.

The Sixth Circuit has held that "an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004); *see also United States v. Tuttle,* 200 F.3d 892, 894 (6th Cir. 2000) (noting that "information received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information"). The Court finds the affidavit here, under the totality of the circumstances, established probable cause.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Riordan's Motion to Suppress (Doc. 12) be, and the same hereby is, DENIED.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: June 28, 2024